IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-00302-KAS

D.F.[1]

      Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION

      Defendant.
_____

**ORDER**
_____
**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

      This matter is before the Court on the **Social Security Administrative Record** [#8], filed on April 3, 2023, in support of Plaintiff's Complaint [#1] seeking review of the decision of the Social Security Administration's Commissioner ("Defendant" or "Commissioner"), denying Plaintiff's claim for disability insurance benefits pursuant to Title II and Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 401 et seq. Plaintiff filed an Opening Brief [#9] (the "Brief"), Defendant filed a Response [#11] in opposition, and Plaintiff filed a Reply [#12]. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court has reviewed the entire case file and the applicable law. For the reasons set forth below, the decision of the Commissioner is **REVERSED AND REMANDED**.[2]

---

[1] Pursuant to D.C.COLO.LAPR 5.2(b), "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only."

[2] The parties consented to proceed before the undersigned for all proceedings pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2. *See Consent* [#10]; *Reassignments* [#13, 14]; *Order of Reference* [#15].

## I. Background

On October 24, 2019, Plaintiff protectively filed an application for disability insurance benefits under Title II and filed a Title XVI application for supplemental security income. Tr. 19.[3] In both applications, she alleged disability beginning January 15, 2017. *Id.* Her claims were initially denied on October 26, 2020,[4] and again on reconsideration on April 1, 2021. *Id.* On June 2, 2022, an Administrative Law Judge (the "ALJ") issued an unfavorable decision. Tr. 16, 38. On December 15, 2022, the Appeals Council denied review. Tr. 1.

The ALJ first determined that Plaintiff meets the insured status requirements of the Act through December 31, 2023, and that she engaged in substantial gainful activity ("SGA") only from January 2017 to December 2017. Tr. 22. However, the ALJ found that there have been continuous 12-month periods during which Plaintiff did not engage in SGA, and the ALJ limited her remaining findings to those non-SGA periods. *Id.*

The ALJ then found that Plaintiff suffers from six severe impairments: (1) status post rotator cuff surgery; (2) Crohn's/irritable bowel syndrome; (3) mild chronic left hip and shoulder osteoarthritis; (4) post-traumatic stress disorder; (5) anxiety; and (6) depression. *Id.* However, the ALJ also found that Plaintiff's impairments, either separately or in combination, did not meet or medically equal "the severity of one of the listed

---

[3] The Court refers to the Transcript of the Administrative Proceedings, located at Docket Nos. 8 through 8-9, by the sequential transcript numbers instead of the separate docket numbers. Also, citations to a brief's page numbers refer to the numbering used by the CM/ECF docketing system, rather than the document's original numbering.

[4] The ALJ stated an initial denial date of October 28, 2020. Tr. 19. The record shows that both initial denials were issued on October 26, 2020. Tr. 79, 81, 89-91, 97-98.

impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." Tr. 23.

The ALJ next concluded that Plaintiff had the residual functional capacity ("RFC") to perform "light work"[5] with the following exceptions:

> [C]an lift 20 pounds occasionally, 10 pounds frequently; can sit, stand, and walk 6 hours each in 8-hour workday with normally given work breaks; can perform at least simple, routine, and repetitive work; can interact appropriately with coworkers and supervisors; can ask questions, sustain a routine, and maintain attendance.

Tr. 25. Based on the RFC and the testimony of an impartial vocational expert ("VE"), the ALJ found that Plaintiff could not perform her past relevant work as a teacher/secondary school, which was a "composite job with teacher/learning disabled." Tr. 35. The ALJ further found that Plaintiff was a "younger individual age 18-49" on the alleged disability onset date, but that she subsequently changed age category to "closely approaching advanced age." Tr. 35. The ALJ found the Plaintiff has at least a high school education. *Id.* The ALJ noted that transferability of job skills was immaterial to her disability determination because, under the Medical-Vocational Rules, a finding of not disabled was supported regardless of whether Plaintiff had transferable job skills. Tr. 36. Finally, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, and given the VE's testimony, there were a significant number of jobs in the national economy

---

[5] "Light work" is defined as follows: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [one] must have the ability to do substantially all of these activities. If someone can do light work, [the agency] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

which Plaintiff could have performed, including the representative occupations of "housekeeping/cleaner," "fast food worker" and "casher II" [sic]. Tr. 36. The ALJ noted that, at the oral hearing, Plaintiff's counsel challenged the VE's proposed job numbers and use of SkillTRAN to determine those numbers. Tr. 36-37. The ALJ overruled the objection and found the VE's job information to be reliable. *Id*. The ALJ concluded that Plaintiff was not disabled at step five. Tr. 37.

The ALJ's decision is the Commissioner's final decision for purposes of judicial review. 20 C.F.R. § 404.981. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. Standard of Review and Applicable Law

Pursuant to the Act:

[T]he Social Security Administration (SSA) is authorized to pay disability insurance benefits and Supplemental Security Income to persons who have a "disability." A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

*Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)). Under the applicable legal standard, a claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). The existence of a qualifying disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. §§ 423(d)(3), 423(d)(5)(A).

"When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effect of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Act; rather, to be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See, e.g., Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995) (citing 42 U.S.C. § 423(d)(1)(A)).

The Court reviews the Commissioner's final decision by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). However, the Court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Casias v. Sec. of Health & Hum. Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). In other words, the Court does not reexamine the issues de novo. *Sisco v. U.S. Dep't of Health & Hum. Servs.*, 10 F.3d 739, 741 (10th Cir. 1993). Thus, even when some evidence could support contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal citation, quotation marks, and modification omitted).

## A.    The Five-Step Framework

The Social Security Administration uses a five-step framework to determine whether a claimant meets the necessary conditions to receive Social Security benefits.

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four, and if the claimant fails at any of these steps, consideration of any subsequent step or steps is unnecessary. *Williams v. Bowen*, 844 F.2d 748, 750, 751 (10th Cir. 1988) ("If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."). The Commissioner bears the burden of proof at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Step one requires the ALJ to determine whether the claimant is "presently engaged in substantial gainful activity." *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004). If not, the ALJ considers at step two whether the claimant has "a medically severe impairment or impairments." *Id.* "An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citing 20 C.F.R. § 404.1521). Next, at step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation," *i.e.*, the "Listings." *Allen*, 357 F.3d at 1142. At step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most [the claimant] can still do despite [their] limitations" and it considers the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. §§ 404.1545(a)(1), (a)(4), 416.945(a)(1), (a)(4). In making an RFC determination, the ALJ must consider all the claimant's impairments, including impairments that are not severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). Also, "the ALJ must consider, at step four, whether a claimant's

impairments prevent [him or her] from performing [his or her] past relevant work." *Wall*, 561 F.3d at 1052. "Even if a claimant is so impaired, the agency considers, at step five, whether [he or she] possesses the sufficient [RFC] to perform other work in the national economy." *Id.*

**B.    Substantial Evidence**

An ALJ must consider all evidence and explain why he or she finds a claimant not disabled. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). However, the ALJ need not specifically "reference everything in the administrative record." *Wilson*, 602 F.3d at 1148. Rather, "we review the Secretary's decision only to determine whether her factual findings are supported by substantial evidence and whether she applied the correct legal standards." *Clifton*, 79 F.3d at 1009 (citing 42 U.S.C. § 405(g) and *Byron v. Heckler*, 742 F.2d 1232, 1234-35 (10th Cir. 1984)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Wilson*, 602 F.3d at 1140 (internal quotation marks and citation omitted). "It requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. A decision by the ALJ is not based on substantial evidence "if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). In other words, the Court's determination of whether the ALJ has supported his or her ruling with substantial evidence "must be based upon the record taken as a whole." *Broadbent v. Harris*, 698 F.2d 407, 412, 414 (10th Cir. 1983). However, the "'failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal" separate from a lack of

substantial evidence." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal citation omitted); *accord Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III. Analysis

Plaintiff argues that the ALJ erred by (1) assessing an RFC that did not include manipulative and non-exertional limitations despite finding that Plaintiff's status post rotator cuff surgery, shoulder osteoarthritis, and Crohn's disease were severe; (2) failing to properly consider PA-C Miller's and Dr. Glover's medical opinions; and (3) failing to account for moderate limitations in concentration, persistence, and pace in Plaintiff's RFC. *Brief* [#9] at 13-22.

### A.      Manipulative and Non-Exertional Limitations

Plaintiff argues that the ALJ should have included manipulative and non-exertional limitations based upon the step-two finding that Plaintiff suffered from severe impairments, including post rotator cuff surgery, shoulder osteoarthritis, and Crohn's disease. *Brief* [#9] at 13-16. The Court disagrees.

The ALJ's finding that an impairment is severe at step two does not mandate a corresponding RFC limitation at step four, because severity is a threshold question, while RFC requires a more detailed analysis of what the claimant is still capable of doing. *See, e.g.*, *Bowen v. Yuckert*, 482 U.S. 137, 148-49 (1987) (stating that "if a claimant is unable to show that [she] has a medically severe impairment . . . there is no reason for the Secretary to consider the claimant's age, education, and work experience"); *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) ("A claimant's RFC to do work is what the claimant is still functionally capable of doing on a regular and continuing basis, despite

[her] impairments[.]"); *accord* Tr. 26 (stating that "the mental [RFC] assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment").

Here, as Defendant points out, the ALJ credited Plaintiff's shoulder impairment in the RFC by limiting her to light work with additional weight limitations. *Response* [#11] at 6-7; Tr. 25 (limiting Plaintiff to light work except she "can lift 20 pounds occasionally, 10 pounds frequently"). In making this determination, the ALJ considered Plaintiff's severe medically determinable impairments but also considered Plaintiff's testimony that, "once in a while," she could lift up to 25 pounds. Tr. 34, 61-62. The ALJ also considered "evidence in the record that [Plaintiff] does activities beyond a light exertional level," such as skiing, bicycling, and lifting a heavy bag while landscaping. Tr. 29 (citing Tr. 403). Plaintiff asserts that "the ALJ's finding of no manipulative limitations is indicative of an implied ability to consistently reach in all directions," which is "contradictory to the ALJ's finding of a severe impairment." *Brief* [#9] at 14. However, Plaintiff does not point to any medical evidence linking her osteoarthritis and status post rotator cuff surgery to *manipulative* limitations, and she fails to show that the ALJ ignored or failed to consider such a medical finding. The ALJ's consideration of Plaintiff's shoulder impairments was supported by substantial evidence.

Regarding Plaintiff's Crohn's disease, the ALJ considered her testimony that she sometimes has to run to the bathroom, gets fevers, and that flare-ups can last from two to four weeks. Tr. 26. The ALJ considered record evidence showing that "even when having a flare, the claimant is able to perform daily activities." Tr. 27 (citing Tr. 466). She noted numerous mentions of Crohn's disease in records from August 2018 through January 2020, and concluded that the light exertional level would accommodate Plaintiff's

abdominal pain and hip pain, as well as her Crohn's disease. Tr. 28-29, 27. This was not "cherry-pick[ing] [a] singular piece of outdated evidence," as Plaintiff argues—in fact, the ALJ considered the very same testimony that Plaintiff quoted in her brief. *Compare Brief* [#9] at 15, *with* Tr. 26-27 (both discussing bathroom use, ability to do daily activities, and flares that last from two to four weeks). The only difference is that Plaintiff also refers to testimony that during a flare, she spends the day "just trying to survive, trying to eat" and sometimes vomits and has diarrhea, but she does not explain why this testimony would require a more restrictive workplace limitation. *Brief* [#9] at 15 (citing Tr. 73). The ALJ's consideration of Plaintiff's Crohn's disease was supported by substantial evidence.

## B.   Anna Miller, PA-C, and Kristina Glover, D.O.

Plaintiff argues that the ALJ failed to properly analyze PA-C Miller's and Dr. Glover's opinions before finding both opinions unpersuasive. *Brief* [#9] at 16-19. The Court agrees, but only as to Dr. Glover.

### 1.   Supportability and Consistency

Pursuant to 20 C.F.R. §§ 404.1520c(b)(2) and 416.920c(b)(2), supportability and consistency are the two most important factors for the ALJ to consider when determining the persuasiveness of medical opinions and prior administrative medical findings. "Regardless of any other factors considered, the ALJ <u>must</u> explain how [she] considered the two 'most important factors'—supportability and consistency." *Crystal R.E. v. Kijakazi*, Case No. 20-cv-00319-SH, 2022 WL 446023, at *6 (N.D. Okla. Feb. 14, 2022) (quoting 20 C.F.R. § 404.1520c(b)(2)) (emphasis in original); 20 C.F.R. §§ 404.1520c(b)(2) and 416.920c(b)(2) (stating that the agency "*will* articulate how [it] considered the

supportability and consistency factors for a medical source's medical opinions") (emphasis added).

The ALJ's analysis of supportability can be brief, if the record supports it. *See, e.g.*, *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (stating that the ALJ must "consider whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques'" and "[i]f the answer to this question is 'no,' then the inquiry at this stage is complete") (internal citation omitted) (quoting Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *2 (July 2, 1996)). However, the ALJ's complete failure to consider supportability is reversible error. *S.P. v. Kijakazi*, No. 22-1077-SAC, 2022 WL 4465080, at *4 (D. Kan. Sept. 26, 2022) (holding that "remand is required because the ALJ erred . . . by failing to consider the [medical] opinion's supportability"); *J.T.L. v. Kijakazi*, No. 22-cv-02343-NYW, 2023 WL 5017241, at *7 n.14 (D. Colo. Aug. 7, 2023) (stating that it "would be grounds for reversal" if the ALJ's analysis "lack[ed] any discussion whatsoever of the supportability of [the provider's] opinions") (citing *S.P.*, 2022 WL 4465080, at *3 (D. Kan. Sept. 26, 2022)).

### 2. Ms. Miller

The ALJ considered a Treating Source Statement submitted by Anne Miller PA-C, and ultimately found Ms. Miller's opinions unpersuasive. Tr. 34 (citing Tr. 523-27). Ms. Miller opined that Plaintiff would be off task more than 25% of the time, can maintain attention and concentration for less than an hour, and would miss work four or more times a month. Tr. 524. The ALJ found that "[t]his opinion form is not fully persuasive as it is not supported by her treatment notes and is inconsistent with the rest of the record." Tr. 34.

This indicates that the ALJ considered both the supportability and the consistency of Ms. Miller's opinions, the two most important factors. 20 C.F.R. § 416.920c(b)(2).

The ALJ identified several instances where other records, and even Plaintiff's own testimony, contradicted the sedentary limitations Ms. Miller proposed. Tr. 34 (citations omitted). For example, even though Ms. Miller opined that Plaintiff could never carry 20 or more pounds, Plaintiff herself testified that she could "once in awhile" carry 25 pounds. *Compare* Tr. 525, *with* Tr. 61-62. The ALJ noted that Ms. Miller's "sedentary lifting limitations are inconsistent with [Plaintiff's] own testimony." Tr. 34. These were not uncontradicted medical opinions, as Plaintiff argues. *Brief* [#9] at 17. Nor did the ALJ "substitute her lay opinion for the medical opinion of PA-C Miller," *id*. at 18—the ALJ cited testimony and other portions of the record that contradicted Ms. Miller's opinions. The Court finds that the ALJ's consideration of Ms. Miller's opinions complied with applicable regulations regarding supportability and consistency and relied on substantial evidence in the record.

### 3.    Dr. Glover

The ALJ also discussed a letter from Kristina Glover, D.O., who indicated Plaintiff had been under her care since August 2021. Tr. 34; Tr. 860. The ALJ noted the diagnoses in the letter were consistent with the record, and she credited Plaintiff's noted chronic pain as "apparent in the record." Tr. 34. However, she found Dr. Glover's opinion that Plaintiff "has exacerbations in her symptoms which prevent her from having a regular full time [sic] job" to be unpersuasive and conclusory. Tr. 34-35. This was the extent of the ALJ's discussion of Dr. Glover's letter, before the ALJ noted that Plaintiff's "inability to work is inconsistent with [her] course of treatment, physical exams, mental status exams, and

overall weight of the evidence" and "appears to be based on [Plaintiff's] report rather than objective exams." Tr. 35.

### a.    Supportability Analysis

While the ALJ repeatedly analyzed some of Dr. Glover's opinions for *consistency*, she did not discuss the *supportability* of Dr. Glover's opinions at all. *See* Tr. 34-35 (noting the diagnoses are "consistent with the record"; chronic pain is "apparent from the record"; and that an inability to work is "inconsistent with [Plaintiff's] course of treatment, physical exams, mental status exams, and overall weight of the evidence"). Even if the ALJ ultimately found Dr. Glover's opinions unpersuasive, she was required to at least consider their supportability. 20 C.F.R. §§ 404.1520c(b)(2) and 416.920c(b)(2). Such a discussion could have included whether Dr. Glover's notes supported her opinions, whether Dr. Glover examined Plaintiff, and whether she explained how or why she reached her opinions. *See, e.g.*, *S.P.*, 2022 WL 4465080, at *3. The ALJ did not mention these factors or any others.[6] *Id.* Dr. Glover was a treating doctor and represented that her opinion was based on her treatment of Plaintiff since August 2021. Tr. 860.

The Court finds that the ALJ's lack of any supportability analysis for Dr. Glover's opinion letter is a significant error. *S.P.*, 2022 WL 4465080, at *4; *J.T.L.*, 2023 WL 5017241, at *7, *9. The Court finds remand is required for the ALJ to discuss the supportability of Dr. Glover's opinions, except the opinion that Plaintiff's "intermittent

---

[6] To the extent the ALJ incorporated the Dr. Glover letter's "indicat[ion] that [Plaintiff] has been under her care since August 2021," that discussion falls under another factor, "relationship with the claimant." Tr. 34; 20 C.F.R. §§ 404.1520c(c)(3), 404.920c(c)(3)(i) (listing "length of the treatment relationship" as a subfactor under "relationship with the claimant"). Consideration of this factor is optional under current regulations. 20 C.F.R. §§ 404.1520c(b)(2), 404.920c(b)(2) (stating that the agency "may, but [is] not required to, explain how [it] considered the factors in paragraphs (c)(3) through (c)(5) of this section").

exacerbations prevent her from having a regular full time job", because that is a statement on an issue reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1520b(c), 416.920b(c) (stating that no analysis is required for "statements that you are or are not . . . able to perform regular or continuing work").

### b.    Dr. Glover's Other Opinions

Additionally, Dr. Glover's letter included several opinions which the ALJ did not mention or discuss at all. Dr. Glover also noted that Plaintiff "began to struggle with her day to day functioning approximately 6 years ago" and her chronic pain "is exacerbated by her psychiatric symptoms." Tr. 860. She also opined that "with the increase in [Plaintiff's] symptoms she has been experiencing worsening problems with her memory over the past several years particularly when her symptoms become exacerbated which makes her day to day functioning more difficult." *Id*. Dr. Glover acknowledged that Plaintiff had seen "some improvement with therapy and medication" but "[s]he continues to have issues with insomnia, daily fatigue, and days full of crippling anxiety." *Id.* The ALJ ignored Dr. Glover's mention of memory, insomnia, fatigue, and the *exacerbation* of her chronic pain. These opinions were not conclusory—they described Plaintiff's symptoms, some of which potentially affect her ability to work, and Dr. Glover linked them to the diagnoses laid out in the letter: "Post Traumatic Stress Disorder [F43.12]; Major Depressive Disorder, Recurrent, Moderate [F33.0], and Generalized Anxiety Disorder [F41.1]." *Id.* Notably, the ALJ found Dr. Glover's diagnoses were "consistent with the record" and, separately, found that Plaintiff's severe impairments included "post-traumatic stress disorder; anxiety; and depression". Tr. 34, 22.

The ALJ may not "pick and choose among medical reports, using portions of evidence favorable to [her] position while ignoring other evidence." *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (quoting *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004)). Nor may the ALJ ignore opinion letters from treating medical providers. *Southard v. Barnhart*, 72 F. App'x 781, 785 (10th Cir. 2003) (reversing and remanding where the ALJ "virtually ignored" a medical provider's "three separate opinion letters detailing [the claimant's] medical issues"). In *Southard*, the ALJ reversibly erred by ignoring an opinion that the claimant's extruded discs made it difficult for him to remain either seated or standing for prolonged periods of time. *Id.* The Tenth Circuit directed the ALJ "to reconsider [the medical provider's] opinions and treatment notes under the rules and regulations for evaluating treating source opinions." *Id.*

The Court finds the same outcome is necessary here, under current regulations for evaluating medical opinions. The ALJ treated Dr. Glover's letter as though it merely reiterated Plaintiff's diagnoses and opined that Plaintiff could not work full time. Tr. 34-35. The ALJ flatly ignored Dr. Glover's opinions about exacerbation of chronic pain, memory, insomnia, daily fatigue, and days full of crippling anxiety. *Compare id.*, *with* Tr. 860. The Court takes no position on how persuasive the ALJ should find these opinions, but she did not even consider them. The Court finds that remand is necessary for the ALJ to consider Dr. Glover's medical opinions which were not discussed in her decision.

## C.     Concentration, Persistence, and Pace

Plaintiff next argues that the ALJ's RFC assessment, without explanation, failed to account for her step three finding of moderate limitations in concentration, persistence,

and pace. *Brief* [#9] at 19-22. Defendant argues that there is no direct relationship between limitations identified at step three and a claimant's RFC. *Response* [#11] at 12.

The Court agrees with Defendant to the extent that a step three limitation does not necessarily require a corresponding RFC limitation. *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015) (stating that "the ALJ's finding of a moderate limitation in concentration, persistence, and pace at step three does not necessarily translate to a work-related functional limitation for purposes of the RFC assessment"). However, the analysis does not stop there—in *Vigil*, the Tenth Circuit went on to examine the ALJ's "more detailed" step four assessment, which included a finding of "'a normal ability to recall items on immediate recall, and an ability to spell words forward, as well as finding of normal thought processes," which "indicate[d] that [the claimant] retain[ed] enough memory and concentration to perform at least simple tasks.'" *Id.* at 1203-04. This was sufficient explanation to affirm, but the court recognized that "there may be cases in which an ALJ's limitation to 'unskilled' work does not adequately address a claimant's mental limitations." *Id.* at 1204 (citing *Chapo v. Astrue*, 682 F.3d 1285, 1290 n.3 (10th Cir. 2012)). After all, "a moderate impairment is not the same as no impairment at all[.]" *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007).

### 1. Inconsistency in the ALJ Decision

Here, at step three, the ALJ found that "with regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation." Tr. 24. This finding was supported by "May 2018 records [which] reflect distractable attention and variable concentration." *Id.* (citing Tr. 398). At step four, the ALJ referenced records from August 2020 through November 2021 which indicated Plaintiff's attention was normal. Tr. 30, 32

(citing Tr. 587, 837, 842, 855). The ALJ noted that "the claimant's mental status exams continue to show no more than mild and moderate limitations despite significant stressors" before going on to state that "[Plaintiff's] mental status exams are largely normal." Tr. 32, 33.

The ALJ went on to find the state agency psychological consultants' initial opinions unpersuasive because they were based on incomplete evidence, noting that "more evidence has come in and is consistent with mild limitations in mental functioning overall, but . . . moderate limitations in concentrating, persisting, and maintaining pace." Tr. 33. She noted that "the record does show some variable concentration." *Id.* Finally, in the ALJ's discussion of the records from Anna Miller, PA-C, she noted that "although one exam in the record noted variable attention/concentration, other records reflect normal attention or focused attention/concentration which is not consistent with maintaining concentration for less than an hour. . . Variable attention/concentration was not a consistent finding in the record." Tr. 34 (citing Tr. 587, 855). The ALJ's RFC determination stated that Plaintiff "can perform at least simple, routine, and repetitive work" and her hypothetical used the same language. Tr. 25, 75 (stating that "the hypothetical individual can perform at least simple, routine, and repetitive work").

The Court finds the ALJ's analysis of Plaintiff's concentration, persistence, and pace completely inscrutable. At step three, the ALJ wrote that "[w]ith regard to concentrating, persisting or maintaining pace, [Plaintiff] has a moderate limitation" before immediately qualifying that statement: "Overall, the record reflects no more than a moderate limitation in concentrating, persisting, or maintaining pace." Tr. 24. Then, at step four, the ALJ cited the presence of evidence "consistent with . . . moderate limitations

in concentrating, persisting, and maintaining pace" as a basis to discount the state agency psychological consultants' opinions, before citing *the lack* of such evidence as a basis to discredit Ms. Miller's opinions. *Compare* Tr. 33 ("the record does show some variable concentration") (citing Tr. 398), *with* Tr. 34 ("although one exam in the record noted variable attention/concentration . . . [v]ariable attention/concentration was not a consistent finding in the record"). It is difficult to understand why the ALJ discounted one provider's opinion based on emergent evidence of attention/concentration limitations, before discounting another provider's opinion based on a lack of evidence of *the same limitations*. Tr. 33, 34.

Relatedly, the ALJ discusses Plaintiff's ability to perform numerous activities of daily living, including part time work as a caretaker, tutoring, exercising, skiing, biking, landscaping, cooking, cleaning, grocery shopping, driving, and personal care tasks. Tr. 33. The ALJ states that these activities "are consistent with an ability to maintain concentration, persistence and pace within the aforementioned light [RFC] with additional limitations as set forth above," but this seems inconsistent for a person with moderate limitations. *Id.* After all, this is a list of activities Plaintiff *can* do (admittedly, not all of which involve concentration, persistence, and pace), with no corresponding discussion of activities Plaintiff *cannot* do. The ALJ's RFC limits Plaintiff to a light exertional level but she can perform "*at least* simple, routine, and repetitive work," which reads as no limitation at all. Tr. 25.[7] Overall, the ALJ's RFC assessment is ambivalent, inconsistent, and unclear.

---

[7] The VE seemed to understand that this is a limitation despite the use of the phrase "at least" rather than "at most", since her proposed jobs each had a specific vocational preparation ("SVP") level of 2. *See* Tr. 76. An SVP of 2 "is in the class of unskilled work" which "needs little or no judgment to do simple duties that can be learned on the job in a short period of time." *Wendelin*

Unfortunately, the resulting inconsistencies confound meaningful review. *See, e.g.*, *Hignite v. Shalala*, No. 93-7103, 1994 WL 235558, at *1 (10th Cir. 1994) (finding that "the Secretary's decision is not capable of meaningful review because it is internally inconsistent and self-contradicting"); *Deveraeaux v. Astrue*, No. 12-cv-1168-WJM, 2013 WL 2393075, at *8-*9 (D. Colo. May 31, 2013) (stating that "because of the above inconsistency, the Court is left with no choice but to remand this case to the Commissioner for rehearing so that material issues to [p]laintiff's disability claim may be reconciled"). While "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence," the agency still must *draw a conclusion*. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007); *Deveraeaux*, 2013 WL 2393075, at *8-*9 (finding reversible error where ALJ found the claimant was limited to reasoning level 1, but also found he could perform jobs requiring reasoning level 2). Here, the inconsistencies in the ALJ's decision require remand for further clarification.

## 2.    Simple, Routine, Repetitive Tasks

Ultimately, the ALJ determined that Plaintiff has an RFC to perform "at least simple, routine, and repetitive work." Tr. 25. However, as Plaintiff correctly notes, if she has a moderate limitation in the area of concentration, persistence, and pace, that limitation could preclude her from even "simple, routine, and repetitive" unskilled work. *See Brief* [#9] at 16-18; *Reply* [#12] at 6-7. Calling a job "unskilled" merely "account[s] for issues of

---

*v. Astrue*, 366 F. App'x 899, 904 (10th Cir. 2010) (citing Soc. Sec. Ruling 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000); 20 C.F.R. § 404.1568(a)); 20 C.F.R. § 416.968(a)). Plaintiff also seems to understand this as a limitation. *Brief* [#9] at 20 ("The ALJ included the limitation of 'simple, routine and repetitive work,' consistent with unskilled work.") (citing Tr. 25). Therefore, any error in the phrasing is harmless.

skill transfer, not impairment of mental functions—which are not skills but, rather, general prerequisites for most work at any skill level." *Chapo v. Astrue*, 682 F.3d 1285, 1290 n.3 (10th Cir. 2012) (internal quotation marks omitted). Additionally, "simple" work is a "catch-all term" likely insufficient to capture a claimant's various mental limitations. *Id*.; *see also Jaramillo v. Colvin*, 576 F. App'x 870, 876 (10th Cir. 2014) (noting that "limitations to simple, routine, and repetitive tasks" did not "capture[] any of the three *moderate* limitations [the treating provider] found", i.e., limited ability to "carry out instructions, attend and concentrate, and work without supervision") (emphasis in original); *Shaw v. Berryhill*, Case No. 1:16-cv-00285-LF, 2017 WL 4119617, at *16 (D.N.M. Sept. 15, 2017) (stating that "the ability to perform simple tasks differs from the ability to stay on task" and "[i]t is the ability to stay on task—not the degree of complexity of the task itself—that is addressed by concentration and persistence") (quoting *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015)); *Deveraeaux*, 2013 WL 2393075, at *8 (noting that "reasoning level 1 involves the ability to understand 'simple' instructions; whereas reasoning level 2 involves the ability to understand 'detailed' instructions") (collecting cases).[8]

Here, the Court cannot determine whether the RFC properly accounts for Plaintiff's limitation in concentration, persistence, and pace, in large part because the ALJ is so inconsistent as to the extent (or even the existence) of Plaintiff's limitations in this area. The ALJ made no clear findings about Plaintiff's moderate limitations in concentration, persistence, and pace, i.e., what she is still capable of doing and what she is not capable

---

[8] Defendant argues that *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015), compels a different result, but as the Court discussed previously, *Vigil* acknowledged that there may be cases in which a limitation to unskilled work is inadequate to address moderate mental limitations. *Response* [#11] at 12 (citing *Vigil*, 805 F.3d at 1204; *but see Vigil*, 805 F.3d at 1204 (citing *Chapo*, 682 F.3d at 1290 n.3). From the ALJ's decision, the Court cannot rule out that this is such a case.

of doing, which might have given the Court more solid grounds to affirm. *Cf. Vigil*, 805 F.3d at 1203-04 (affirming based on the ALJ's specific step-four findings about the claimant's recall, spelling, and thought process which indicated that the claimant "retain[ed] enough memory and concentration to perform at least simple tasks").

The Court finds that the ALJ's discussion of Plaintiff's concentration, persistence, and pace warrants reversal and remand for clarification and further explanation. First, the ALJ's analysis was self-contradictory and indecisive, confounding meaningful review. Second, to the extent the ALJ found a moderate limitation in the area of concentration, persistence, and pace, there was no explanation of how an RFC restriction to "simple, routine, and repetitive work" would accommodate Plaintiff's limitation. Tr. 25. Accordingly, the decision of the Commissioner must be **reversed and remanded** for further proceedings.

## IV. Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that the decision of the Commissioner is **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.[9]

IT IS FURTHER **ORDERED** that Plaintiff is **AWARDED** her costs, to be taxed by the Clerk of the Court pursuant to Fed. R. Civ. P. 54(d)(1), D.C.COLO.LCivR 54.1, and 28 U.S.C. § 2412(a)(1). *See, e.g.*, *Knuutila v. Colvin*, 127 F. Supp. 3d 1146, 1153 (D. Colo. 2015).

---

[9] The Court finds that this case does not present a proper occasion on which to exercise its discretion and direct the award of benefits. *See Nielson v. Sullivan*, 992 F.2d 1118, 1122 (10th Cir. 1993). By reversing the ALJ's decision, the Court does not find or imply that Plaintiff is or should be found disabled. *See, e.g.*, *Knuutila v. Colvin*, 127 F. Supp. 3d 1146, 1152 n.5 (D. Colo. 2015).

IT IS FURTHER **ORDERED** that the Clerk of Court shall enter judgment in favor

of Plaintiff and close this case.

Dated: March 27, 2024                    BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge